Thomas W. McNamara
info@regulatoryresolutions.com
Regulatory Resolutions
501 West Broadway, Suite 2020
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Court-Appointed Monitor*

Daniel M. Benjamin (SBN 209240)
dbenjamin@mcnamarallp.com
Andrew W. Robertson (SBN 62541)
arobertson@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Benjamin LLP
501 West Broadway, Suite 2020
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Monitor*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. LACV16-00555 SJO (SSX) |
| Plaintiff, | **MONITORSHIP STATUS REPORT** |
| v. | JUDGE:  Hon. S. James Otero |
| TELESTAR CONSULTING, INC., also d/b/a Kleritec and United Business Supply; and KARL WESLEY ANGEL, individually and as a principal of Telestar Consulting, Inc., | CTRM:  1 |
| Defendants. | |

# MONITORSHIP STATUS REPORT

## I.

## INTRODUCTION

In my capacity as the court-appointed Monitor, I submit this periodic Status Report to apprise the Court of the operational and financial status of the monitorship implemented by the Stipulated Preliminary Injunction entered March 24, 2016 (ECF No. 38). This periodic report addresses matters beyond the issues raised in the Monitor's Report of Violations of Preliminary Injunction filed on July 26, 2016 (ECF No. 50).

By the Temporary Restraining Order ("TRO") entered February 1, 2016 (ECF No.17), I was initially appointed Receiver for the business activities of Receivership Defendant Telestar Consulting, Inc. ("Telestar"), also doing business as Kleritec and United Business Supply. I filed a detailed Preliminary Report on March 10, 2016 (ECF No. 36) which summarized the state of the business and my determination that it could, in theory, be operated lawfully going forward, but only with a sea change in its telemarketing sales practices. I also reported that it was not necessary to consider a complex plan to relaunch telemarketing sales because Defendants were prepared to transition to a new business model that did not deploy telemarketing – rather, sales would be made through two channels – wholesale sales to large retailers and sales to consumers through an Internet store.

On March 24, 2016, the Court entered the Stipulated Preliminary Injunction (ECF No. 38) which included prohibitions against identified unlawful practices, but also provided that Defendants could make certain "Permitted Sales" through wholesale distribution and sales to consumers provided they did not engage in any telemarketing of their goods to consumers. The Preliminary Injunction also appointed me as "Monitor for the business activities of the Defendants," thus converting the receivership to a monitorship.

///

From March 24, 2016, I have acted as Monitor rather than Receiver. By this Status Report, I report to the Court on my activities as Monitor from March 24, 2016 to present and provide an accounting summary through July 29, 2016.

## II.

## MONITOR ACTIVITIES

### A. Return of Business Operations to Defendants

The first order of business in the transition from Receiver to Monitor was to return control of the business and the building in Sylmar to Defendants. We provided Defendant Karl Angel the keys. Since March 25, 2016, Defendants have had full possession and control of the Sylmar business premises. In the near term, we made regular unannounced site visits, but soon concluded that such visits were not necessary. During the week of July 18, 2016, we discovered, however, that Defendants were engaged in telemarketing activities in violation of the Preliminary Injunction – these violations were reported in the July 26, 2016 report (ECF No. 50).

### B. Processing Undeposited Consumer Payments

At inception of the receivership, we found undeposited checks from consumers making payments to Kleritec for merchandise. These checks continued to arrive in the weeks thereafter. The challenge here was to exclude the acceptance of consumer funds "tainted" by acts prohibited by the TRO, but deposit those checks where we found no evidence of taint. We developed a comprehensive procedure to vet these consumer checks and deposit only those where we had no reason to believe the consumer was the victim of the unlawful conduct alleged in the FTC's Complaint and prohibited in the TRO and the Stipulated Preliminary Injunction. We periodically provided specific updates to the FTC and the Defendants on our progress.

To date, we have completed this process as to three tranches of checks, totaling 362 checks with an aggregate total of $197,604.94. We ultimately

approved for deposit to the receivership account 190 of those checks totaling $67,949.53, although some checks have not yet cleared.  We have one final tranche to review.

### C.     Collection of Accounts Receivable

At the inception of the receivership, Kleritec also carried substantial accounts receivables.  The collection of these accounts receivables posed the same challenge as undeposited checks – institute a procedure to exclude collection from "tainted" sales.  We have commenced implementation of a collection process to be staffed by personnel retained by the monitorship – that process will provide all consumers an opportunity to report any issues or complaints.  As to those where we find evidence of taint, we will cease collection efforts.  As to the others, we will request payment of outstanding invoices.  We will carefully monitor the staff implementing this process to ensure that no inappropriate tactics are deployed to secure payment.  We provided both parties an outline of our proposed process, and modified some facets based upon input from the FTC.

### D.     Review of Marketing and Advertising Materials

Defendants submitted to the Monitor proposed email messages they intended to send to former Kleritec customers alerting them to the new internet store.  We exchanged several rounds of edits with counsel for Defendants and were near the final version of these email advertisements when we discovered evidence of telemarketing violations as recounted in detail in the July 26, 2016 report.

### E.     Financial Summary

The monitorship account currently has a cash balance of $686,785. Attached as Exhibit A is a Receipts and Disbursements Summary since inception of the monitorship through July 29, 2016. The start point is the $948,049 in the receivership account upon the March 24, 2016 entry of the Stipulated Preliminary Injunction converting the receivership to a monitorship.  $46,481 in consumer payments for Kleritec merchandise have since been credited to the account – an

additional $21,468 in consumer payments have been deposited, but have not yet been credited to the account as they remain pending. Distributions have included $223,973 for receivership professional fees approved by the Order of April 29, 2016 (ECF No. 46), $5,656.06 in monitorship operating expenses, and $78,070 in Court-approved distributions to and/or for the benefit of the Defendants.

Dated:  July 29, 2016          By:   S/ Thomas W. McNamara
                                     Thomas W. McNamara
                                     Receiver

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users.

          S/ Andrew W. Robertson
          Andrew W. Robertson